UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WORLD FUEL SERVICES (SINGAPORE) PTE LTD<br><br>VERSUS<br><br>M/V VARESIA, her engines, tackle, apparel, etc., *in rem* | CIVIL ACTION<br><br>NO. 16-17435<br><br>SECTION M (5) |

**ORDER & REASONS**

Before the Court is a motion for damages due to wrongful arrest filed by MS AS Varesia GmbH & Company KG (the "Owners") appearing on behalf of defendant the M/V *Varesia*, her engines, tackle, apparel, etc., *in rem*,[1] to which plaintiff World Fuel Services (Singapore) Pte Ltd ("WFS") responds in opposition,[2] and in further support of which the Owners reply.[3] Having reviewed the applicable law and the parties' memoranda, the Court issues this Order & Reasons.

**I.   BACKGROUND**

This case concerns the arrest of a vessel predicated on a lien for unpaid bunkers. The pertinent facts of this case were explained by the Fifth Circuit as follows:

> In 2012, Plaintiff-Appellant World Fuel Services Singapore PTE Ltd. (World Fuel) contracted to provide marine fuel to Denmar Chartering and Trading GMBH (Denmar), which was chartering the cargo ship M/V AS VARESIA (the Varesia). The fuel was delivered on November 4, 2012, and World Fuel sent an invoice to the Varesia "AND/OR HER OWNERS/OPERATORS" and Denmar for $612,459.56. The invoice indicated that the balance was due by December 4, 2012. Denmar failed to pay this invoice by the due date, but did wire one payment of $200,023 on January 18, 2013, and one payment of $500,023 on January 22, 2013. The parties dispute whether these payments were to be apportioned to the Varesia invoice or to other debts Denmar owed World Fuel.

---

[1] R. Doc. 34.
[2] R. Doc. 35.
[3] R. Doc. 43.

Denmar liquidated via insolvency proceedings in Germany in or around July 2013.  World Fuel received notice of these proceedings by September 2013, but did not participate in them.  World Fuel alleges that, at the time of Denmar's insolvency, Denmar owed World Fuel over five million dollars across multiple invoices, including the Varesia invoice.  World Fuel claims that Denmar's failure to pay for the fuel gave rise to a maritime lien on the Varesia.

In May 2015, World Fuel sent a demand letter to MS AS VARESIA GMBH & Company KG, the owner of the Varesia (the Owner).  In May 2016, World Fuel again demanded payment from the Owner and commenced a legal action in Australia to arrest the vessel, but ultimately did not have the vessel arrested.

On the evening of December 10, 2016, the Varesia arrived in the Mississippi River.  On December 15th, World Fuel filed a complaint in the Eastern District of Louisiana seeking to enforce its lien and seeking a warrant for the arrest of the Varesia.  A warrant issued that same day, but at World Fuel's request, the warrant was not served until the morning of January 5, 2017.

Hours after the warrant was served, the Owner filed a motion to vacate the arrest, arguing, inter alia, that any lien had "been extinguished by the operation of laches and/or by payment."  In its memorandum in support of vacatur, the Owner contended that Denmar had allocated specific payments to the Varesia invoice, thereby extinguishing any lien on the Varesia.  The Owner also argued that laches barred enforcement of the lien because (1) World Fuel's action was filed after the expiration of the analogous limitations period, (2) World Fuel's delay was not excusable, and, as a result of the unjustified delay, (3) the Owner suffered prejudice in its ability to defend against the claim.

The district court held a hearing on the motion to vacate the morning of Friday, January 6th.  Counsel for World Fuel stated that he had not seen the motion to vacate until "very late" the night before, and so had not had an opportunity to research the laches issue.  However, World Fuel asserted that in the years between the invoice and the arrest of the vessel in New Orleans, it "was attempting to collect from Denmar and following the [Varesia] to seek an opportunity to enforce the lien," suggesting that World Fuel could not enforce its lien until the Varesia entered the United States.  In response to the court's questions about what "course of conduct" demonstrated "any type of attempt to pursue the claim," rather than just the vessel, World Fuel pointed to the demand letter sent to the Owner in 2015 and stated that there may have been other factors showing World Fuel's diligence.  World Fuel continued that, even if there was unjustified delay, there was no resultant prejudice to the Owner inasmuch as the record was "clear" that the Owner had "the ear of Denmar's [former] managing director," the ability to get "documents from him," and the ability to get "a sworn declaration from him."

At the end of the motion hearing, the district court stated that it did not believe that the Owner's argument regarding apportionment of payments to the Varesia debt successfully defeated World Fuel's right to effect an arrest in good faith. However, the court requested an opposition memorandum from World Fuel addressing the Owner's arguments with respect to laches. The court expressed concern that the Varesia had been taken out of commerce, which the Owner claimed cost roughly $27,000 per day. Accordingly, the court stated that any additional filings should be submitted by 9:00 am Monday, January 9th, so as to expedite the matter while giving World Fuel the opportunity to "respond fully to the laches argument." The court indicated that it might rule on the motion as early as 9:45 am on January 9th.

On January 9th, the court extended the deadline for filing a response to 11:00 am. World Fuel failed to file any opposition before the deadline. At 2:15 pm, the court ruled that, "[o]n the showing made," the warrant for the arrest of the Varesia was improvidently issued and should be vacated. After the district court entered its order, World Fuel filed its opposition. The district court then entered an order denying World Fuel's "Ex Parte Emergency Motion to Reconsider." That motion is not in the record on appeal.

On January 10th, World Fuel filed a notice of appeal "from the order/judgment" that was "rendered and entered on January 9, 2017," citing to the docket number of the order vacating the arrest of the Varesia.

*World Fuel Servs. Singapore PTE, Ltd. v. M/V AS VARESIA*, 727 F. App'x 811, 812-14 (5th Cir. 2018). The Fifth Circuit affirmed the district court's order vacating the arrest on the grounds that WFS's claim was barred by laches. *Id.* at *817.

## II. PENDING MOTION

While WFS's appeal was pending, the Owners filed the instant motion for damages due to wrongful arrest.[4] The Owners argue that such damages are warranted because WFS acted in bad faith by obtaining the warrant to arrest the *Varesia* on December 15, 2016, but waiting until January 5, 2017, when the vessel was about to set sail, to execute it.[5] The Owners argue that WFS's actions prevented them from taking action to vacate the arrest before the vessel's scheduled departure date.[6] WFS also argues, in its reply memorandum, that this Court should use its inherent authority to sanction WFS for hampering the litigation by delaying the execution

---
[4] R. Doc. 34.
[5] R. Doc. 34-1 at 9-11.
[6] *Id.* at 11.

3

of the warrant to arrest the vessel.[7] WFS opposes the motion arguing that the Owners cannot prevail on their motion for damages because WFS had a bona fide lien on the vessel and did not act in bad faith, but rather was employing a litigation strategy to obtain settlement without needing to effectuate the arrest and thereby incur the associated costs.[8]

## III. LAW & ANALYSIS

### A. Damages for Wrongful Arrest

"To recover for wrongful arrest of a vessel, there must be (1) no bona fide claim of a maritime lien on the vessel and (2) a showing of 'bad faith, malice, or gross negligence [on the part] of the offending party.'" *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 574-75 (5th Cir. 2015) (quoting *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 499 (5th Cir. 1992)). The party alleging wrongful arrest has the burden of proof. *Id.* (citations omitted). Bad faith is the "gravamen of the right to recover damages for wrongful seizure or detention of vessels." *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d at 500 (citing *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937)). The Fifth Circuit has held that a lien holder acts in good faith when there is "a bona fide dispute over the validity of [the] lien" and "the parties could have legitimately and honestly believed that the lien would stand up." *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 475 (5th Cir. 1984).

At the hearing on the Owner's motion to vacate the arrest, this Court[9] recognized three times that there was a genuine factual dispute about whether WFS had a bona fide lien on the *Varesia*.[10] The Court relied on the doctrine of laches to vacate the arrest, and made no findings

---

[7] R. Doc. 43 at 3-5.
[8] R. Doc. 35 at 4-12.
[9] This action was originally allotted to Section N of this Court. R. Doc. 6. When Judge Kurt D. Engelhardt was elevated to the Fifth Circuit, this case was re-allotted to Section B. R. Doc. 49. It was re-allotted again to Section M upon the confirmation of the undersigned. R. Doc. 50.
[10] R. Doc. 31 at 5, 21-22 & 30-31.

4

regarding the validity of the lien. *See World Fuel Servs.*, 727 F. App'x at 816-17.[11] In *John W. Stone Oil Distributor, Inc. v. M/V Miss Bern*, 663 F. Supp. 773, 780 (S.D. Ala. 1987), the court held that a maritime lien that is "barred by laches does not give rise to a claim for wrongful seizure since [the lienholder] has the right to have the court determine whether or not its lien was barred by laches." That is precisely what occurred in this case. WFS's arrest of the *Varesia* was not transformed into bad faith by the Court's determining WFS's lien was barred by laches, when there existed a genuine dispute about whether WFS had a bona fide lien that was not resolved by the Court's disposition of the matter. Therefore, the Owners cannot recover damages for wrongful arrest.

### B. Inherent Authority

In their reply memorandum, the Owners ask this Court to exercise its inherent authority to sanction WFS for its conduct in this litigation and award the Owners damages for the wrongful arrest.[12] Courts do not consider new arguments raised in reply memoranda. *See, e.g., Ross v. W&T Offshore, Inc.*, 2018 WL 3970679, at *3 (E.D. La. July 17, 2018) (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)). However, this is not a case that warrants the imposition of sanctions in any event. As noted by the Fifth Circuit, "[f]ederal courts have the inherent power to assess sanctions under certain circumstances, such as when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the very temple of justice." *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 134 (5th Cir. 2017) (citations and quotations omitted). "In using its inherent power, a district court must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* (citations and quotations omitted). Here, this Court has already determined that WFS did not act

---

[11] However, at the end of the hearing, the Court did state "that it did not believe that the Owner's argument regarding apportionment of payments to the Varesia debt successfully defeated World Fuel's right to effect an arrest in good faith." *World Fuel Servs.*, 727 F. App'x at 814.

[12] R. Doc. 43 at 3-5.

5

in bad faith in seeking to arrest the vessel pursuant to what it believed was a valid and enforceable maritime lien, even though the Court ultimately held it could not enforce the lien due to laches. Further, the Court will not pass judgment on WFS's litigation strategy as it was not obviously vexatious or wanton and certainly did not "define the very temple of justice."

## IV. CONCLUSION

Accordingly, IT IS ORDERED that the Owner's motion for damages due to wrongful arrest (R. Doc. 34) is DENIED.

New Orleans, Louisiana, this 18th day of January, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE